**Roger PECK, Appellant,**

v.

**J. Norris CONDER, Nelson County Jailer, Appellee.**

Supreme Court of Kentucky.

Aug. 20, 1976.

Jack Emory Farley, Public Defender, Joe A. Jarrell, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., for appellee.

PALMORE, Justice.

This is an appeal from an order of the Nelson Circuit Court entered in a habeas corpus proceeding denying the appellant's application for a release from the Nelson County jail.

It appears from the record before us that on January 16, 1976, Roger Peck, the appellant, was convicted by the Nelson Circuit Court of stealing cattle (KRS 514.030) and was sentenced to six months in jail. On May 12, 1976, the county judge of Nelson County entered an order granting parole to

Peck for the remainder of his sentence, "on the following terms and conditions:

"a. Shall report at least once a month to James Graham, the Probation and Parole officer, until July 16, 1976.

"b. Shall not be convicted of any crime or engage in any criminal activity during that period of time."

Several days following his release from jail pursuant to the order of the county judge the Nelson Circuit Court entered an order directing the rearrest of Peck and declaring the order of the county judge null and void. On the same day the Nelson Circuit Court issued a writ of prohibition against the county judge declaring KRS 439.177 invalid because it "fails to set out any standard for determining whether a defendant should be paroled," etc. This habeas corpus proceeding followed.

KRS 439.177 and 439.179, which pertain to the release of persons confined in jail, were enacted after this court had held invalid a previous statute authorizing parole of such prisoners for the reason that it provided no means of implementation. See *Murphy v. Cranfill*, Ky., 416 S.W.2d 363 (1967), in which it was observed that an unconditional grant of parole amounts to a pardon, thus violating Const. § 77. The current statute, KRS 439.177, remedies this particular deficiency and places all such parolees under supervision of the state correctional authorities and subjects them to its rules and regulations. This status continues until the parolee is recommitted to jail as a parole violator or until he is finally discharged from parole.

Subsection (2) of KRS 439.177 provides that upon the petition of a misdemeanant serving a sentence of 30 days or more the county judge of the county in which he is being held "shall study the record" of the petitioner "and, in his discretion, may:

"(a) Cause additional background or character information to be collected or reduced to writing by the bureau of corrections;

"(b) Conduct hearings on the desirability of granting parole;

"(c) Impose on the parolee such conditions as he sees fit;

"(d) Order the granting of parole;" etc.

While it is true that the statute does not prescribe criteria to which the county judge is restricted in determining whether a person should or should not be placed on parole, our attention has not been drawn to any constitutional inhibition against its being an entirely discretionary matter. The law involved in *Murphy v. Cranfill*, Ky., 416 S.W.2d 363 (1967), was not declared void on the ground that there were no specified "terms and conditions" precedent to the granting of parole, but was declared so because there were no terms and conditions applicable after the granting of parole. We find in the arguments in this record no authority for the proposition that a legislative grant of the power to parole must premise it upon specific findings or criteria.

Nor is there any requirement, statutory or otherwise, that the county judge must recite in his order granting parole whether he has studied the petitioner's record or has done any of the other things the statute authorizes him to do. It is elementary that a formal order issued by an officer whose authority includes the issuance of such orders is presumed to be valid, and therefore supported by whatever the law requires, until it is shown otherwise. So, though it is true as recited in the writ of prohibition issued by the Nelson Circuit Court that the order of the county judge "contains no findings which indicate that the County Judge studied the record of the above named defendant," the omission is irrelevant for the simple reason that there was no requirement that the order contain such findings. Cf. *Commonwealth v. Pineur*, Ky., 533 S.W.2d 527, 528 (1976). Moreover, though we need not pass on the question of whether a study of the applicant's record is mandatory, in that its absence would be fatal to an order granting parole, during the evidentiary hearing conducted by the circuit court in this case there was no showing that the county judge had not studied Peck's record.

■ The position of the circuit court as disclosed in colloquy with counsel during the course of the hearing was that if KRS 439.177 is valid a county judge may "countermand" the action of a circuit court. This overlooks the fundamental fact that when a person has been convicted of a crime and has begun to serve his sentence the function and authority of the trial court is finished. What then happens to the prisoner is entirely in the bailiwick of the executive branch of government, and is no business of the courts, including the trial court. In granting parole the county judge acts in an executive capacity, not a judicial capacity. *Murphy v. Cranfill*, Ky., 416 S.W.2d 363, 365 (1967).

■ It is the opinion of this court that to the extent that KRS 439.177 provides a procedure under which a county judge, in his capacity as an officer of the executive branch of government, may grant parole privileges to a misdemeanant, it satisfies the objections raised in *Murphy v. Cranfill*, Ky., 416 S.W.2d 363 (1967), and that the order entered by the county judge of Nelson County granting such privileges to the appellant sufficiently complied with the statute. We express no opinion with respect to the possible invalidity or partial invalidity of the statute on grounds not raised in this case.

The judgment is reversed with directions that the appellant be granted relief pursuant to his petition for habeas corpus.

All concur except JONES, J., who dissents.

JONES, Justice (dissenting).

Many years ago Sir Edward Coke, in his treatise on the common law, insisted that:

"Reason is the life of the law; nay the common law is nothing but reason * *. The law, which is perfection of reason."

In the present controversy, a recurring one, the common law is not at issue. A statute pertaining to the parole of misdemeanants is the compelling force that commands the attention of this court. Whether the common law or a statute is involved, a search for the truth by the use of logic and reason should prevail. To strive to seek and not to yield in a search for the efficient administration of justice should be the constant goal of this or any court.

In my view the majority opinion is based neither on logic, reason, nor a valid law. For that reason, I dissent.

In order that my reasons for dissent be properly positioned, it is necessary to briefly summarize the pertinent facts.

On January 16, 1976, Roger Peck pled guilty of theft by taking cattle of the value of less than $100.00. The Nelson Circuit Court sentenced Peck to confinement in jail for six months.

Three months and twelve days later, the County Judge of Nelson County paroled Peck "from the balance of his sentence on the following terms and conditions:

a. Shall report at least once a month to James Graham, probation and parole officer, until June 16, 1976.

b. Shall not be convicted of any crime or engage in any criminal activity during that period of time."

The county judge contended that his authority to parole Peck was contained in the provisions of KRS 439.177. It is noted that neither the trial court nor the Commonwealth's Attorney were notified of the county judge's action.

When the trial court learned of the parole order of the county judge, he entered an order prohibiting the county judge from issuing further orders in the proceedings. He also issued a warrant for Peck who was again confined in the Nelson County jail. Peck filed a writ of habeas corpus. A hearing was held before the trial court. The writ was denied. Peck appeals.

The trial court considered the action of the county judge in paroling Peck as a usurpation of his authority. He questioned the validity of KRS 439.177. At the hearing, the trial court said:

"Now it narrows down to this point. I am well aware of that KRS 439.177. It is my opinion that this refers to a misdemeanant who has been placed in custody

by the County Judge, not the Circuit Judge. Because—if the County Judge can counterman (sic) of the Circuit Court, he can countermand an order of the Supreme Court of the State of Kentucky. If the Supreme Court of Kentucky can put a man in jail over here, the County Judge could turn him loose.

"Now, if he can do that to me without any notice, it is amazing to me.

"Further, I find that there are no guidelines set down and, as far as I know, there have been no records introduced of any guidelines set down in the County Court to do this.

"Now, I am going to deny the writ of Habeas Corpus; but I will do this since there is a question about this statute—I certainly don't want to keep this man in custody illegally and I will permit him to make bond.

"But I want it appealed to the Court of Appeals. And if I am wrong—all right, we'll just turn all the cattle thieves loose that we try, by the County Judge, if he wants to. So if I am compelled to release a cattle thief I want the Supreme Court to tell me so * * *."

The majority opinion upheld the action of the county judge. In my opinion that action is based on neither reason, logic and a statute that is totally invalid. The majority opinion begs the question when it says:

"We express no opinion with respect to the possible invalidity or partial invalidity of the statute on grounds not raised in this case."

I am of the opinion that KRS 439.177(1) is invalid. This court has the final authority to determine the constitutional validity of legislative acts. I am of the opinion also that this court is impelled by that responsibility to examine the act before declaring it valid. See *Rash v. Louisville and Jefferson County Met. S. District*, 309 Ky. 442, 217 S.W.2d 232 at p. 235.

Now, we view the illogical and unintelligible provisions of KRS 439.177(1) which states in part:

"Any misdemeanant, sentenced for a period of thirty (30) days or more, may if sentenced by the police court of a city *of the first, second or third class*, petition the sentencing court for parole privileges. Any misdemeanant, sentenced by the *police court* of a city of the fourth, fifth, or sixth class or by any court other than a city of the *first three classes*, may petition the county judge of the county in which he is held, for parole privileges."

Other provisions of the statute give the county judge unfettered, carte blanche discretion to parole misdemeanants.

The vice in KRS 439.177 is that it makes an arbitrary distinction between cities of the first three classes and other cities, so that it violates Section 59 of the Constitution prohibiting the enactment of special laws. It comes close to being within the express prohibition against special acts regulating the punishment of crimes and misdemeanors.

A police judge is not an executive officer. Therefore, he is not, nor could he be vested with parole privileges of misdemeanants. Under the statute, who then would have parole privileges of misdemeanants in cities of the first three classes?

I am convinced by reading the county judge's parole order that no guidelines were followed. The probation and parole officer testified as follows:

"Q Now, then did the County Judge tell you anything different with regard to Mr. Peck's reporting to you?

"A Well, he said it was up to me and he didn't *have to report unless he wanted to or unless I wished to supervise him*."

The county judge totally ignored KRS 439.550 which deals with the Department of Corrections and Parole. The County Judge of Nelson County in effect granted Peck a pardon. That right is vested exclusively in the Governor of the Commonwealth.

The circumstances presented in this case are comparable to the admiral telling the captain to let a midshipman take the helm.

For a more efficient administration of justice, I would affirm the judgment.

For the reasons stated herein, I dissent.